U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 05-45417

ADVERSARY PROCEEDING NO: 06-80084

ORDER DENYING OBJECTION TO DISCHARGEABILITY OF DEBTS

The relief set forth on the following pages, for a total of 13 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/13/2006**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 10/17/2006

UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| IN RE:<br><br>Douglas L. Bleam,<br><br>                Debtor<br>_____<br><br>Arrow Concrete Company<br><br>                Plaintiff<br>vs.<br><br>Douglas L. Bleam,<br><br>                Defendant<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO: 05-45417-DD<br><br><br><br><br><br><br><br><br>ADV. PROCEEDING NO.: 06-80084-DD |
| IN RE:<br><br>John R. Kautter,<br><br>                Debtor<br><br>ARROW CONCRETE CO.,<br>                Plaintiff,<br><br>vs.<br><br>JOHN R. KAUTTER,<br><br>                Defendant<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO: 06-00128-JW<br><br><br><br><br><br><br><br>ADV. PROCEEDING NO: 06-80090-JW |

ORDER DENYING OBJECTION TO DISCHARGEABILITY OF DEBTS

THIS MATTER is before the Court on complaints of Arrow Concrete Co. ("Plaintiff" or "Arrow") seeking a determination that the debts owed it by John R. Kautter ("Kautter") and Douglas L. Bleam ("Bleam")(hereinafter Kautter and Bleam are jointly referred to as "Defendants" or "Debtors") not be discharged in the bankruptcy cases filed by the Debtors. Arrow's claim is that Defendants failed to ensure that their construction business paid Arrow's claim for materials supplied for construction jobs undertaken by the business, that Defendants are personally liable for the debt under South Carolina law, and that the failure to pay the debt is

a defalcation by Defendants while in a fiduciary capacity with Arrow. The complaint seeks an exception from discharge pursuant to 11 U.S.C. §§ 523(a)(2),(a)(4) and (a)(6)[1] of a debt in the amount of $38,560.05. The issues are joined and the parties have presented the case by stipulated facts and briefs.

## STIPULATION OF FACTS

The facts admitted by the pleadings are:

1. Arrow is a foreign company licensed to do business in the State of South Carolina with all fees and a license paid. It is otherwise entitled to bring these actions.

2. Bleam filed a petition for relief under chapter 7 of the Bankruptcy Code on December 22, 2005. His case was subsequently converted to chapter 13 on Bleam's notice of conversion and reconverted to chapter 7 on a finding that the debtor was not eligible for chapter 13 relief due to the debt limitations of 11 U.S.C. § 109(e). Kautter filed a petition for relief under chapter 7 of the Bankruptcy Code on January 13, 2006.

3. That this court has jurisdiction and that these proceedings are core proceedings.

4. Plaintiff is a creditor in the bankruptcy proceedings of the Debtors.

5. Bleam and Kautter are officers and/or directors of Concrete Impressions of the Lowcountry, Inc. (hereinafter "Concrete Impressions"), a South Carolina corporation.

6. Bleam, Kautter, and/or Concrete Impressions received payment

---

[1] Further reference to sections of the Bankruptcy Code, 11 U.S.C. § 101 *et. seq.* is by section number only.

or other compensation for the services, labor, and/or material provided by the Plaintiff and failed to remit to the Plaintiff payment for same.

7. During and after the times mentioned in the complaint, Defendants remitted no payment(s) to the Plaintiff.

8. By obtaining and/or accepting an extension of credit from Plaintiff and incurring charges on the account, Defendants as officers and/or directors of Concrete Impressions represented an intention to repay the amounts charged.

The parties also stipulated the following facts (omitting the parenthetical specifications of abbreviated further reference and substituting others to achieve consistency and to avoid confusion):

9. Douglas L. Bleam and John R. Kautter, were the shareholders, directors, and principals of Concrete Impressions, a South Carolina corporation engaged in the construction trade.

10. As principals of Concrete Impressions, both individuals were responsible for overseeing the accounting and bookkeeping for Concrete Impressions.

11. The Debtors were further responsible for hiring and routing payment to laborers, subcontractors, and materialmen utilized by Concrete Impressions in its construction business.

12. In maintaining the accounting and bookkeeping for Concrete Impressions, the Debtors neither maintained nor required the maintenance of separate job cost ledgers or tallies for each construction project undertaken by Concrete Impressions.

13. The Debtors, and accordingly Concrete Impressions, failed to maintain separate accounting records for each project or job site.

14. Neither the Debtors nor Concrete Impressions have any way to demonstrate the extent, if any, to which laborers, subcontractors, and materialmen were paid out of the proceeds received from the particular projects undertaken by Concrete Impressions as required by the laws of South Carolina.

15. Arrow, was a materialman that supplied materials totaling Thirty-eight Thousand Five Hundred Sixty and 55/100 Dollars ($38,560.55) in value on a variety of construction jobs undertaken by Concrete Impressions.

16. Concrete Impressions received payments for work performed on the various construction jobs and projects which it undertook.

17. Concrete Impressions utilized the funds received from the various jobs and project to meet various expenses and expenditures unrelated to the claimant.

18. Concrete Impressions, operating under the control of Debtors, failed to remit any payment to the Claimant out of funds received from some of the underlying construction projects.

19. Due to the failure of maintaining job cost accounting records for Concrete Impressions' business, the Debtors are unable to determine how much money was received on each job on which the Claimant was involved or determine the amounts incurred with other laborers, subcontractors, or materialmen for such projects.

20. No effort has been taken, or presently can be taken, to allocate

the monies received amongst all the laborers, subcontractors or

materialmen associated with each project.

## ISSUES

Arrow maintains that South Carolina law creates a first lien on and a trust in money received by a contractor in connection with the erection or repair of a building in favor of material suppliers and others, in proportion to the respective claims of the unpaid laborers, subcontractors and suppliers.  Arrow further contends that state law renders the failure to pay these claims a misdemeanor and that it also supplies a remedy for non-payment in tort.  Arrow argues that corporate officers and directors are or can be personally culpable for the misdemeanor and civilly liable for the injury.  Finally, Arrow argues that the debt should be excepted from the discharge in these cases pursuant to § 523(a)(4).  Defendants' answer to Arrow's complaint admits Arrow's status as a creditor of the individual debtors.  Their brief suggests that this liability is by virtue of "a standard personal guarantee" which is not before the Court.  Defendants deny that they individually are "contractors" within the meaning of the South Carolina construction lien statute and deny that they are fiduciaries or that their acts were a defalcation within the meaning of the Bankruptcy Code

## CONCLUSIONS OF LAW

The plaintiff has the burden of proving an objection to discharge under § 727 or an exception from dischargeability under § 523 by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279 (1991); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994).  The party challenging the dischargeability of a debt bears the burden of proof.  *Robb v. Robb (In re Robb)*, 23 F.3d 895 (4th Cir. 1994).  Once the plaintiff makes a prima facie case, the burden of proof shifts to the debtor to offer credible evidence to satisfactorily explain his or her conduct. *Farouki*, 14 F.3d at 249-50.  "The exceptions to discharge were not intended and must not be allowed to swallow the general rule favoring discharge."  *In re Cross*, 666 F.2d 873 (5th Cir.

1982). Thus, exceptions to discharge are narrowly construed.

The Court turns first to the Plaintiff's claims pursuant to §§ 523(a)(2) and (a)(6). The Plaintiff's brief does not mention these sections and it appears to have abandoned these causes of action. The Defendants' answers to the complaints included motions to dismiss these claims for relief pursuant to Fed. R. Civ. P. 12(b)(6). In dismissing claims for failure to state a cause of action a court must construe the allegations in the light most favorable to the plaintiff and assume the facts alleged in the complaint to be true. If it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint then the offending causes of action must be dismissed. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The plaintiff's refers to § 523(a)(2) without noting or differentiating its two subsections, which require significantly different proof. To establish a claim under § 523(a)(2)(A), "[a] creditor must establish five elements . . . (1) that the debtor made a representation, (2) that at the time the representation was made, the debtor knew it was false, (3) that the debtor made the false representation with the intention of defrauding the creditor, (4) that the creditor justifiably relied upon the representation, and (5) that the creditor was damaged as the proximate result of the false representation. *See Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999); *MBNA Am. v. Simos (In re Simos)*, 120 B.R. 188, 191 (Bankr. M.D.N.C. 1997). On the other hand, § 523(a)(2)(B) requires a false written statement respecting the financial condition of a debtor or insider. *In re Blackwell*, 702 F.2d 490, 492 (4th Cir. 1983). No set of facts could be proven under the complaint to support a cause of action under § 523(a)(2) in that there is no allegation of making a representation with the intent of defrauding the creditor, justifiable reliance, or a written statement. The cause of action under § 523(a)(2) is dismissed.

The plaintiff refers to § 523(a)(6) in its complaint, but nowhere in the complaint is there notice by allegation of any basis for a claim of willful and malicious injury to plaintiff or its

property.  The cause of action under § 523(a)(6) is likewise dismissed.

Turning to the remaining cause of action, § 523(a)(4) requires proof of three elements. These are that a defendant was obligated to a plaintiff in a fiduciary capacity, that the defendant committed fraud or defalcation while acting in that capacity, and that the debt due plaintiff is from the fraud or defalcation.  *See Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir. 1997)("In order to prove a debt is non-dischargeable under § 523(a)(4) of the Bankruptcy Code, a creditor must prove the debtor committed "[1] fraud or defalcation {2} while acting in a fiduciary capacity.")  The statute itself provides the third element.  It precludes discharge of a debt arising from enumerated conduct.

"'Fraud' for purposes of this exception has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud." 4 *Collier on Bankruptcy*, ¶ 523.10 at pg. 523-70 (15th ed. rev. 2006).  The plaintiff here argues defalcation and not fraud.  Judge Learned Hand broadly discussed the term defalcation and his definition of the term serves as the starting point for many courts.  He supplied the definition in the context of the predecessor section under the Bankruptcy Act to what is now § 523(a)(4):

> "[D]efalcation" may demand some portion of misconduct; we will assume *arguendo* that it does.  All we decide is that when a fiduciary takes money upon a conditional authority which may be revoked and knows at the time that it may, he is guilty of a "defalcation" though it may not be a "fraud" or an "embezzlement" or perhaps not even a "misappropriation."

*Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937).

Three lines of authority have emerged; extending from the view that an innocent mistake in fully accounting for funds is a defalcation, to requiring negligence, or even reckless conduct as a prerequisite to the finding.  *See 4 Collier on Bankruptcy,* pg. 523-71.  This Court gave a detailed explanation of the term defalcation in an early case under the Bankruptcy Code.

> The case law interpreting the term "defalcation" has given it a broad definition.  "Generally, defalcation is a failure to account for

> money or property that has been entrusted to one." *American Metals Corp. v. Cowley (In re Cowley)*, 35 B.R. 523, 529 (Bankr. D. Kan. 1983). *Treacher v. Duttenhofer (In re Duttenhofer)*, 12 B.R. 926, 7 B.C.D. 1187 (Bankr. C.D. Cal. 1981); *See Kansas State Bank and Trust Co. v. Vickers (In re Vickers)*, 577 F.2d 683 (10th Cir. 1978). A mere deficit resulting from the debtor's misconduct, even if the debtor's conduct does not benefit him, may be "defalcation*."* *In re Cowley*, 35 B.R. at 529; *Aetna Insurance Co. v. Byrd (In re Byrd)*, 15 B.R. 154, 8 B.C.D. 436 (Bankr. E.D. Pa. 1981). "Defalcation" is the slightest misconduct, and it need not be intentional misconduct; negligence or ignorance may be "defalcation." *In re Cowley*, 35 B.R. at 529. *See, In re Duttenhofer, supra.*; *Baugh v. Matheson (In re Matheson)*, 10 B.R. 652, 7 B.C.D. 643 (Bankr. S.D. Ala. 1981).

*Landvest Assoc. v. Owens (In re Owens)*, 54 B.R. 162, 165 (Bankr. D. S.C. 1984).

Given the underlying principles of balanced relief for honest debtors, recovery by creditors from property not necessary for a fresh start, and the narrow construction of discharge exceptions, some degree of culpability or slight misconduct on the part of a debtor should be required before determining a debt not dischargeable. *Schwager v. Fallas (Matter of Schwager)*, 121 Fed.3d 177, 184 (5th Cir. 1997). The showing need not involve *scienter* and the conduct need not rise to the level of fraud, embezzlement or misappropriation. Based on the stipulations of the parties, the conduct of the debtors in failing to account meets the broad definition of defalcation. However, an actionable defalcation for purposes of applying § 523(a)(4) arises only in the context of a fiduciary relationship and apart from its existence within the bounds of a fiduciary relationship, defalcation has no meaning under the Bankruptcy Code.

We turn then to the meaning of 'fiduciary capacity." The definition of "fiduciary" in a dischargeability action is a matter of federal law. *In re Heilman*, 241 B.R. 137 (Bankr. D. Md. 1999). The Bankruptcy Code does not define "fiduciary capacity," however, the term is narrowly or strictly construed in dischargeability actions. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328 (1934)(The sale of an automobile out of trust was not a defalcation in a fiduciary capacity under the Bankruptcy Act of 1898, §17(4)); *In re Duiser*, 12 B.R. 538, 539 (W.D. Va.

1981).   Courts generally hold that the relationship must arise from a pre-existing express or technical trust.  *In re Murphy*, 9 B.R. 167, 173 (Bankr. E.D. Va. 1981).  It may also arise from a statutory trust.  See *In re Snyder,* 184 B.R. 473 (D. Md. 1995)(Trust under Perishable Agricultural Commodities Act, 7 U.S.C. § 499e(c)).  The trust relationship must not spring from conduct as in the case of a constructive or resulting trust.  "It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as trustee *ex maleficio*.  He must have been a trustee before the wrong and without reference to the wrong."  *Davis*, at 333.  This narrow construction begins with interpretations of the Bankruptcy Act of 1841 in the case *Chapman v. Forsyth*, 43 U.S. 202 (1844)(A factor is not a fiduciary).

> If the act embrace such a debt, it will be difficult to limit its application. It must include all debts arising from agencies; and indeed all cases where the law implies an obligation from the trust reposed in the debtor. Such a construction would have left but few debts on which the law could operate. In almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust. But this is not the relation spoken of in the first section of the act.  The cases enumerated, 'the defalcation of a public officer,' 'executor,' 'administrator,' 'guardian,' or 'trustee,' are not cases of implied but special trusts, and the 'other fiduciary capacity' mentioned, must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract. A factor is not, therefore, within the act.

*Id*., at 208.

The courts are deeply divided in applying § 523(a)(4) to attorneys, corporate directors, officers and shareholders, general partners, limited partners, joint venturers, property managers, insurance agents, lottery agents, contractors, subcontractors, and homebuilders.  *See generally cases collected, Heilman*, at 152 – 56.  In the building industry context "[a] variety of trust relationships do not meet the 'fiduciary' test of § 523(a)(4)."  3 Bruner & O'Connor, *Construction Law* § 8:45.

While the definition of defalcation and fiduciary capacity are found in federal law, resort

to state law is necessary to establish the extent and existence of the party's relationship. *In re Martin*, 161 B.R. 672 (B.A.P. 9th Cir. 1993). The plaintiff relies on S.C. Code Ann. §§ 29-7-10 & 20 (1976, as amended) to establish the relationship of Arrow and Concrete Impressions. The statutes provide:

> Any contractor or subcontractor in the erection, alteration, or repairing of buildings in this State shall pay all laborers, subcontractors, and materialmen for their lawful services and material furnished out of the money received for the erection, alteration, or repairs of buildings upon which such laborers, subcontractors, and materialmen are employed or interested and such laborers, as well as all subcontractors and persons who shall furnish material for any such building, shall have a first lien on the money received by such contractor for the erection, alteration, or repair of such building in proportion to the amount of their respective claims. Any person providing private security guard services at the site of the building during its erection, alteration, or repair shall be deemed to be a laborer within the meaning of this section. Nothing herein contained shall make the owner of the building responsible in any way and nothing contained in this section shall be construed to prevent any contractor or subcontractor from borrowing money on any such contract. "Person" as used in this section shall mean any individual, corporation, partnership, proprietorship, firm, enterprise, franchise, association, organization, or other such entity.

§ 29-7-10 Code of Laws of S. C. (1976, as amended).

> A contractor or subcontractor who, for other purposes than paying the money loaned upon such contract, transfers, invests or expends and fails to pay to a laborer, subcontractor, or materialman out of the money received as provided in Section 29-7-10 is guilty of a misdemeanor and, upon conviction, when the consideration for the work and material exceeds the value of one hundred dollars must be fined not less than five hundred dollars nor more than one thousand dollars or imprisoned not less than three months nor more than six months and when such consideration does not exceed the value of one hundred dollars must be fined not more than five hundred dollars or imprisoned not longer than thirty days.

§ 29-7-20(1) Code of Laws of S.C. (1976, as amended).

The indebtedness of Defendants to Arrow is admitted, at least in some form. Arrow argues that the defalcation arises from the Defendants' failure to pay or cause the payment of Arrow's claim. Plaintiff claims that Defendants may incur criminal liability under the

construction lien statute and *State v. Hill*, 286 S.C. 333 (S.C. App. 1985). The State's interest in prosecution of crimes for fraudulent failure to pay is distinguished from collection of debt considerations and may be pursued independently; even in the bankruptcy context. *See § 362(b)(1)*. Arrow also argues in its brief that the Defendants have personal liability for the debt by virtue of their participation as director or officer "in the commission of a tort (such as a breach of trust or of a fiduciary duty)" under *BPS, Inc. v. Worthy*, 362 S.C. 319 (S.C. App. 2005). The statute at issue begins with requiring payment of laborers and suppliers from money received on a project and turns to creating a lien in the same sentence.

The general rule that "fiduciary capacity" requires the showing of an express trust is altered or ignored by some courts in applying § 523(a)(4) in the context of construction lien statutes. "The application of § 523(a)(4) to construction trust fund laws is, by no means, uniform." 3 Bruner and O'Conner, *Construction Law* § 8:45. Many states have similar laws requiring payment of laborers, subcontractors and material suppliers, creating a lien in favor of the unpaid party and providing criminal sanctions for failing to pay. Many of these statutes create a specific trust or use the term trust in the body of the statute; South Carolina's does not. Among those states with statutes specifically raising a trust in favor of the unpaid subcontractors and suppliers, there is a split of authority as to whether §523(a)(4) precludes discharge, even within the same circuit. See *In re Faulkner*, 213 B.R. 660, 665 (Bankr. W.D. Tex. 1997); *In re Nicholas*, 956 F.2d 110 (5th Cir. 1992). The cases often turn on a construction of state law. The problem with relying on state law to too great an extent is that it considers practically every agent to be a fiduciary. *Heilman,* at 157.

South Carolina law does not create a trust, express or otherwise, in the construction lien statute. It may create some generalized duty in agency and in debtor – creditor law to pay the debt. This may even be termed a fiduciary relationship under state law. The Bankruptcy Code does not recognize every trust as creating "fiduciary capacity," but rather it envisions and

requires more.  There must be an intention of the parties to abide in a trust relationship.  Here the parties have an ordinary commercial relationship, albeit, one secured by statutory lien with an attendant duty to pay and potential criminal implications.  Nevertheless, it is a contractual relationship and the liability of the Defendants is, at its root, for materials supplied.  The relationship created by the provision of materials for the construction project is that of debtor and secured party, not trustee and beneficiary.  No true trust relationship is imposed by the South Carolina construction lien statute sufficient to create a "fiduciary capacity" for purposes of federal law and dischargeability under the Bankruptcy Code.  That the statute fails to mention a trust and put the parties on notice of the relationship supports hewing to the narrow construction.

The bankruptcy jurisprudence of "fiduciary capacity" extends back to the Act of 1841. *See Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980); *Hamby v. St. Paul Mercury Indemnity Co.*, 217 F.2d 78 (4th Cir. 1954). Congress has shown no intention of overruling this long line of precedent by continuing to employ the term "fiduciary capacity" in the discharge provisions of the current bankruptcy law.  While the Courts have not followed the straightest of lines in interpreting the statute, the majority rule favors the more narrow construction.

The objection to the discharge of the debt owed by Bleam and Kautter to Arrow is denied.

AND IT IS SO ORDERED.